**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

**DIVISION II**

| | |
|---|---|
| ROGER LEISHMAN, | No. 58929-0-II |
| Appellant, | |
| v. | |
| KATHRYN NADINE REYNOLDS, Executive Director of the Washington State Executive Ethics Board; and OFFICE OF THE GOVERNOR, | UNPUBLISHED OPINION |
| Respondent. | |

MAXA, P.J. – Roger Leishman appeals the trial court's final judgment following a bench trial in his lawsuit under the Public Records Act (PRA), chapter 42.56 RCW, against the Office of the Governor.

Leishman previously was employed by the Attorney General's Office (AGO) as an Assistant Attorney General (AAG). The AGO terminated Leishman's employment in May 2016, and Leishman filed a lawsuit against the AGO that ultimately was settled. In April 2020, Leishman filed an employment and civil rights lawsuit against the AGO and others that was removed to federal court. Jeffrey Grant, an AAG, was assigned to defend the AGO and various state officers.

In October 2020, Leishman emailed public record requests to the Office of the Governor for records related to himself and to open employment positions. The Governor's Office never received the October 2020 email requests.

Leishman subsequently sent emails to Kathryn Leathers – general counsel of the Governor's Office – and Grant in November 2020, April 2021, and May 2021 referencing the record requests. Whether Leathers or Grant actually received these emails was disputed at trial. And in June 2021, Leishman filed a declaration in the federal lawsuit to which he attached the April 2021 email. This declaration was served on Grant as the attorney for the Governor's Office.

In September 2021, Leishman sent Leathers an email that purported to attach the October 2020 public record requests. The Governor's Office claimed that there were no attachments or the attachments were illegible. The Governor's Office finally acknowledged receipt of the October 2020 public record requests in October 2021 after receiving an email attaching the requests.

Leishman sued the Office of the Governor under the PRA. After trial, the trial court entered judgment in favor of the Governor's Office and entered extensive findings of fact and conclusions of law. The court found that Leathers did not receive the November 2020 and April 2021 emails and that the evidence was insufficient to determine whether Grant received the November 2020, April 2021, and May 2021 emails. The court also concluded that even if Grant did receive the emails, that receipt did not give the Governor's Office fair notice of the October 2020 public record requests because he was not an employee or agent of the Governor's Office for purposes of receiving PRA requests. Therefore, the court concluded that the Governor's Office did not have fair notice of Leishman's public record requests until October 2021.

We hold that (1) the emails Leishman sent to Grant did not provide fair notice to the Governor's Office of Leishman's October 2020 public record requests because the trial court entered specific findings of fact that the evidence was insufficient to determine whether Grant received those emails and Leishman provides no argument that substantial evidence did not support those findings; (2) even if Grant did receive the emails, the trial court did not err in concluding that his receipt as an AGO employee did not provide fair notice to the Governor's Office of the October 2020 public record requests; (3) Leishman's June 2021 declaration in federal court attaching the April 2021 email did not provide fair notice to the Governor's Office of the October 2020 public record requests; (4) regardless of whether the mailbox rule applies to emailed PRA requests, substantial evidence supports the trial court's findings that the Governor's Office did not actually receive the October 2020 public record requests through various emails; and (5) the trial court did not abuse its discretion in denying Leishman's CR 60(b)(4) motion based on fraud relating to the September 2021 email to Leathers.

Accordingly, we affirm the trial court's final judgment dismissing Leishman's PRA claim.

FACTS[1]

In 2015, the AGO hired Leishman as an AAG at Western Washington University. Soon after, Leishman started experiencing physical and emotional difficulties and was diagnosed with PTSD. The AGO denied his request for an accommodation for his condition. Leishman alleged that he was being subjected to sexual orientation discrimination. The AGO terminated Leishman's employment in May 2016.

---

[1] Because unchallenged findings of fact are treated as true on appeal, this fact section cites the trial court's findings of fact where Leishman does not dispute them. *Young v. Toyota Motor Sales, U.S.A.*, 9 Wn. App. 2d 26, 32, 442 P.3d 5 (2019). Disputed facts cite the relevant trial court record.

After Leishman was terminated, he filed a lawsuit against the AGO. The parties reached a settlement in that lawsuit.

In April 2020, Leishman sued the AGO and numerous other defendants for employment discrimination in a lawsuit that was removed to federal court. Former AAG Jeffrey Grant represented the AGO.

*Public Record Requests and No Response*

On October 9, 11, and 12, 2020, Leishman sent three public record requests by email to the Office of the Governor. He requested all records referring or relating to himself, relating to the job position "Senior Education Ombuds," and relating to the job position "Associate Education Ombuds (part-time)." Clerk's Papers (CP) at 637. He sent his public record requests to the email address listed by the Governor's Office. However, Tricia Smith, the public records officer for the Governor's Office, testified at trial that in the Fall of 2021 she checked the inbox and junk folder for her email and the Governor's Office public records email, and these public record requests were never received by the Governor's Office.[2] As a result, the Governor's Office did not respond the Leishman's requests.

After not receiving a response, Leishman on November 12, 2020 sent an email to Leathers with a copy to Grant and Jill Thompson in the Office of Financial Management. In the email, Leishman followed up on his October 2020 PRA requests and asked when he could receive a response. Whether Leathers, Grant, or Thompson received this email was the subject

---

[2] In his opening brief, Leishman concedes that the Governor's Office's failure to receive the October 2020 public record request would not warrant penalties under the PRA. Leishman limits his PRA claim on appeal to the Governor's Office's alleged failure to respond after Grant received an email from Leishman about his PRA request on November 12, 2020.

of dispute at trial. Leathers testified that she did not receive this email. The Governor's Office did not respond to Leishman's requests in November 2020.

On April 28, 2021, Leishman sent an email to Leathers, with a copy to Grant and Thompson, attaching a second amended complaint from his federal lawsuit. Paragraph 326 of a 57-page complaint alleged that the Governor's Office had "refused to respond to Leishman's requests filed under the Public Records Act." CP at 638. In his email, Leishman stated, "Also attached are copies of my outstanding requests under the Public Records Act, which are referenced in the Second Amended Complaint." CP at 638. Whether Leathers, Grant, or Thompson received this email was the subject of dispute at trial. Leathers testified that she never received the April 2021 email. The Governor's Office did not respond to Leishman's requests in April 2021.

Grant appeared as counsel on behalf of the Governor's Office in the federal lawsuit in May 2021.

On May 25, 2021, Leishman sent an email to Grant and copied other AGO employees about unanswered communications. This email referenced Leishman's April 28 email to Leathers as unanswered. Whether Grant received this email was the subject of dispute at trial. The Governor's Office did not respond to Leishman's requests in May 2021.

On June 1, 2021, Leishman filed a declaration in his federal lawsuit that attached his April 28, 2021 email to Leathers as an exhibit. But the declaration attached only the email itself and did not attach the October 2020 public record requests. And Leishman testified that the April 2021 email was among a group of exhibits he submitted identifying all the communications he had with opposing counsel, which related to a dispute over compliance with the meet and confer requirement in federal court. The trial court found that Grant had actual notice of the

declaration as the attorney representing the Governor's Office in the federal lawsuit. The Governor's Office did not respond to Leishman's requests following this declaration.

On September 17, 2021, Leishman sent an email to Grant and the Chief of the AGO's Tort Division, with copies to Leathers and others, attaching a five page letter. Leishman's letter referenced the April 28, 2021 email and stated that the Governor's office had not responded to his October 2020 public record requests. Leathers testified that she did not receive the email, but she found it in her junk folder after the email was forwarded to her. However, there is no indication that the October 2020 public record requests were attached. Leathers testified that she asked Smith to look for the referenced public record requests, and Smith reported that she did not find them after searching the emails of all the Governor's staff. The Governor's Office did not respond to Leisman's requests following this email.

Grant sent an email reply stating that some of Leishman's communications had not been received correctly and implied that it was due to Leishman's unique email address domain name.

Leishman testified that on September 29, 2021 he sent an email to Leathers with a copy to Grant in which he claimed that he attached copies of his October 2020 public record requests. A copy of that email was not admitted into evidence. An exhibit admitted into evidence showed that the Governor's Office stated in response to requests for admission that the September 29 email was received by Leathers's email server but the email did not contain the attachments Leishman said were attached or that the attachments were illegible. At trial, Leishman did not ask Leathers any questions about the September 29 email.

On October 10, 2021, Leishman sent an email to Leathers, with a copy to Grant and others, that referenced and attached the October 2020 public record requests. On October 12, the Governor's Office acknowledged receipt of the October 2020 record requests. The Governor's

Office provided responsive records on October 13. The Governor's Office stated that previously they had "not been able to locate the original submission of these requests." CP at 639. Leathers testified that Leishman finally was able to successfully submit his public record requests in October 2021.

*Trial and Ruling*

Leishman filed a lawsuit against the Office of the Governor for relief under the PRA.[3] At trial, the court heard testimony from Leishman, Leathers, Smith, Thompson, and an AAG named Greg Silvey, and admitted 62 exhibits into evidence. The testimony and exhibits outlined the course of events as described above.

The Governor's Office also presented expert testimony from Serge Jorgensen and Joel Eussen about its email practices and information security. Both testified that based on their searches, they did not locate any evidence that Leishman's October 2020 public record request emails were received in the Governor's Office's email inboxes before September or October 2021. They stated that "[i]nternet mail servers employ filters and programming designed to intercept and not deliver suspicious email that may cause harm to email and other IT systems," and the Governor's Office and the AGO use such filters. CP at 647-48. They also stated that "[w]hen a suspicious email is not delivered to the intended recipient, neither the sender nor the intended recipient is provided notice of non-delivery." CP at 648. The trial court found that it could not be determined whether Leishman's unique email address caused it to be blocked by security software at the Office of the Governor.

---

[3] Leishman's lawsuit also initially included Kathryn Reynolds, director of the Executive Ethics Board, as a defendant. But an amended complaint names only the Office of the Governor.

The trial court entered extensive findings of fact and conclusions of law. The trial court found credible Smith's testimony that she conducted a search and determined that the October 2020 public record requests were never received by the Governor's Office's email inbox or junk folder. The court entered a finding that the October 2020 email requests "were not received in the Governor's Office public records email inbox or junk mail folder . . . in October 2020." CP at 649.

Regarding the November 2020 email, the trial court found that Leathers was credible when she testified that she did not receive this email. The court made an unchallenged finding that neither Leathers nor Thompson received the email in their inboxes in November 2020 and there was insufficient evidence whether they received the emails in their junk email folders in November 2020. The trial court also made a finding – challenged by Leishman – that "[t]here is insufficient evidence to determine whether this email was received either in the inbox or the junk mail folder of Jeffrey Grant (AGO) in November 2020." CP at 649-50.

Regarding the April 2021 email, the trial court found that Leathers was credible when she testified that she did not receive this email. The court made a finding – challenged by Leishman – that Leathers did not receive the email in her inbox in April 2021. The court made an unchallenged finding that Thompson did not receive the email in her inbox in April 2021. And the court made an unchallenged finding that there was insufficient evidence to determine whether Leathers or Thompson received the email in their junk email folders in April 2021. The trial court also made a finding – challenged by Leishman – that "[t]here is insufficient evidence to determine whether this email was received either in the inbox or the junk mail folder of Jeffrey Grant (AGO) in April 2021." CP at 650.

Regarding the second amended complaint attached to the April 2021 email, the trial court found that as the attorney for the Governor's Office, Grant had knowledge of the claims in the second amended complaint. These claims included Leishman's claim that the Governor's Office had refused to respond to his PRA requests. But the court made a finding – challenged by Leishman – that "[b]ecause the complaint did not attach the three October 2020 requests or provide detail regarding the nature and timing of the requests, the complaint did not provide enough specific information to alert the Governor's Office to Mr. Leishman's October 2020 requests." CP at 250.

Regarding the May 2021 email, the trial court made a finding – challenged by Leishman – that "[t]here is insufficient evidence whether Mr. Grant received Mr. Leishman's May 25, 2021, email in his email inbox in May 2021." CP at 650.

In its conclusions of law, the trial court stated that it applied the "mailbox rule" to decide whether the Governor's Office received Leishman's emails. The trial court presumed that Leishman's emails were sent, but ruled that the Governor's Office "rebutted the presumption of actual receipt before October 2021" based on the testimony of Smith and Leathers. CP at 653-54. The court ruled that Leishman's April 2021 amended complaint in his federal lawsuit did not give the Governor's Office fair notice of his public record requests because the amended complaint only made a vague reference to the request, did not assert a PRA claim, and did not attach the requests.

Regarding Leishman's emails to Grant, the trial court noted that "[t]here is evidence raising an inference that some of these emails were not delivered to Mr. Grant's email inbox and instead were delivered to his junk folder on the dates they were sent." CP at 656. The court further stated:

9

Even if these emails all arrived in Mr. Grant's email inbox on the dates Mr. Leishman sent his emails, Mr. Grant is not an employee of the Governor's Office. Directing a records request to a different agency is not "fair notice" to the Governor's Office. No legal authority supports a conclusion that because Mr. Grant provided legal assistance to the Governor's Office around the time these emails were directed to him that he became an employee or agent of the Governor's Office for purposes of receipt of records requests to the Governor's Office. Directing a records request to an attorney for an agency who is not an employee of that agency is not fair notice to the agency of the request.

CP at 656.

The trial court concluded that because the Governor's Office had actual notice of the records request on October 10, 2021 and produced records on October 13, the response was timely under the PRA. The court dismissed Leishman's PRA claim with prejudice and entered a final judgment in favor of the Office of the Governor.

*Motion for Reconsideration*

Leishman filed a motion for reconsideration. He argued at the hearing on the motion that the evidence showed that the Governor's Office received the October 2020 public record requests on September 29, 2021 rather than on October 11, 2021 as the trial court found. The Governor's Office argued in response that the September 29 email did not contain any attachments or that any attachments were illegible.

The trial court denied the motion for reconsideration. The court stated, "[H]aving heard the argument I regret that I did not include a paragraph with a finding on September 29th. However, not having included a paragraph, I don't think that there's legal error or evidentiary error not to reach that conclusion or not to have an express finding." Rep. of Proc. (RP) (Sept. 29, 2023) at 18. The court noted that the email was not in evidence, which did not allow it to make a conclusion on whether the record requests were attached. The court also relied on

Leathers's testimony that she was not aware of the specific public record request until October 2021, which "informs the issue as to September 29th." RP (Sept. 29, 2023) at 19.

*CR 60(b)(4) Motion*

Leishman subsequently filed motion to vacate the judgment under CR 60(b)(4). He argued that the judgment was fraudulent because the Governor's Office stated that it was not aware of the public record requests before October 2021, but Leishman sent Leathers an email attaching the requests on September 29, 2021. The Governor's Office stated in responses to request for admission that the attachments to the email were either not attached or illegible. But Leishman argued that the records the Governor's Office produced after trial in response to his PRA requests showed that the attachments were legible, and therefore the Governor's Office had actual notice of his public record requests on September 29, 2021.

Leishman acknowledged that the first email he sent on September 29 did not contain the attachments which Grant pointed out in a reply email. But he claimed that in response he sent a second September 29 email to Leathers and Grant with the attachments.

Leishman argued that this evidence showed that the Governor's Office made a deliberate misrepresentation to the trial court. Leishman requested that the trial court vacate the judgment, hold that the Governor's Office had actual notice of the public record requests on September 29 rather than on October 10, and find the agency liable for violating the PRA. Leishman also requested a hearing on PRA penalties.

The Governor's Office argued that Leishman could not show by clear and convincing evidence that fraud occurred in obtaining the judgment. The Governor's Office acknowledged that it admitted it received the September 29, 2021 email but that the attachments described in Leishman's email were not sent. In addition, the Governor's Office stated that the attachment

Leishman described was illegible because it was a screenshot and denied that any attachments with the relevant requests were ever received. The Governor's Office also stated that Leishman failed to rebut the responses to the requests for admission admitted at trial that stated that the Governor's Office never received the attachments.

The trial court denied Leishman's CR 60(b)(4) motion. The court ruled that there was no clear and convincing of fraud in the judgment based on the testimony at trial, noting that at trial Leishman did not question Leathers about the September 29 email.

Leishman appeals the trial court's judgment and denial of his CR 60(b)(4) motion.

ANALYSIS

A.    PUBLIC RECORDS ACT PRINCIPLES

The PRA presents a mandate for the broad disclosure of public records. *Green v. Pierce County*, 197 Wn.2d 841, 850, 487 P.3d 499 (2021). An agency has an affirmative duty to disclose public records upon request unless disclosure is specifically exempt. RCW 42.56.070(1); *Green*, 197 Wn.2d at 850.

We review an agency's compliance with the PRA de novo. RCW 42.56.550(3). "When the trial court has weighed the evidence in a bench trial, we review whether the court's findings of fact are supported by substantial evidence and, if so, whether the findings support the conclusions of law." *Rufin v. City of Seattle*, 199 Wn. App. 348, 354-55, 398 P.3d 1237 (2017) (addressing a PRA claim). Substantial evidence is the amount of evidence sufficient to convince a rational, fair-minded person that a premise is true. *Real Carriage Door Co. ex rel Rees v. Rees*, 17 Wn. App. 2d 449, 457, 486 P.3d 955 (2021). We do not review the trial court's credibility determinations. *Real Carriage Door,* 17 Wn. App. 2d at 457. And we treat unchallenged findings of fact as true on appeal. *Id.*

Whether the trial court's findings of fact support its conclusions of law is a question of law we review de novo. *Rufin*, 199 Wn. App. at 355.

B.    FAIR NOTICE OF PUBLIC RECORD REQUEST

Leishman argues that the trial court erred when it concluded that the Governor's Office did not have fair notice of Leishman's public record requests based on his (1) November 2020, April 2021, and May 2021 emails to Grant; and (2) June 2021 federal court declaration that was served on the Governor's Office. We disagree.

1.    Legal Principles

" '[T]he P[R]A only applies when public records have been requested. In other words, public disclosure is not necessary until and unless there has been a specific request for records.' " *O'Dea v. City of Tacoma*, 19 Wn. App. 2d 67, 80, 493 P.3d 1245 (2021) (alterations in original) (quoting *Germeau v. Mason County*, 166 Wn. App. 789, 804, 271 P.3d 932 (2012)). "No official format is required for making a records request; however, agencies may recommend that requestors submit requests using an agency provided form or web page." RCW 42.56.080(2).

We apply a "fair notice" test to determine whether an agency knew or should have known that a request was a request for public records under the PRA. *O'Dea*, 19 Wn. App. 2d at 80. A public record request must " 'state the request with sufficient clarity to give the agency fair notice that it ha[s] received a request for a public record.' " *Id.* (alteration in original) (quoting *Wood v. Lowe*, 102 Wn. App. 872, 878, 10 P.3d 494 (2000)). We look to the both to the characteristics of the request and the characteristics of the requested records. *O'Dea*, 19 Wn. App. 2d at 80.

The relevant characteristics of the requests are "(1) its language, (2) its format, and (3) the recipient of the request." *Id.* at 81. The relevant characteristics of the records are " '(1)

13

whether the request was for specific records, as opposed to information about or contained in the records,' '(2) whether the requested records were actual public records,' and '(3) whether it was reasonable for the agency to believe that the requester was requesting the documents under an independent, non-PRA authority.' " *Id.* (quoting *Germeau*, 166 Wn. App. at 807).

In *O'Dea*, O'Dea's attorney mailed letters requesting public records to the City of Tacoma that were clearly labeled as public record requests. 19 Wn. App. 2d at 72-73. It was undisputed that for unknown reasons, the City never received O'Dea's public record requests. *Id.* O'Dea subsequently filed a lawsuit against the City for violating the PRA based on the City's failure to respond to the public record requests. *Id.* at 74. Attached to the complaint were his original requests. *Id.* The City took no action on the public record requests nor did it send the requests attached to the complaint to its public records officer. *Id.* The trial court ruled that the City received the public record requests when they were attached to the complaint and the City violated the PRA by failing to respond to them. *Id.* at 75.

This court affirmed the trial court's ruling. *Id.* at 82-83. Regarding the characteristics of the request, the court held that the type of records requested clearly were public records. *Id.* at 81. Although the letters were attached to a complaint rather than on the City's PRA submission form, the court noted that "agencies cannot mandate a particular mode of submission." *Id.*

Regarding the characteristics of the records, the court stated that the only issue was whether it was reasonable for the City to believe that O'Dea requested documents under a non-PRA authority. *Id.*. The court held that "it was obvious that the plaintiffs had already attempted to submit these letters as public records requests" because the letters were attached to a complaint in a PRA lawsuit. *Id.* at 81-82. In addition, the basis of the complaint was a failure to

14

respond to the letters. *Id.* at 82. Therefore, the court held that O'Dea's complaint "made clear that he sought public records and he was awaiting a response to the PRA request letters." *Id.*

### 2. Emails to Grant

Leishman challenges the trial court's conclusion of law 3.20, which states that the emails he sent to Grant did not provide fair notice to the Governor's Office of his October 2020 public record requests. Leishman assumes without discussion or argument that Grant did receive those emails.

However, the trial court made express factual findings – findings 2.43. 2.44, and 2.45 – that there was insufficient evidence to determine whether Grant received the November 2020, April 2021, or May 2021 emails when they were sent. Leishman attaches as an appendix to his brief the trial court's findings of fact and conclusions of law with the portions he wishes to challenge struck through. He struck though findings 2.43. 2.44, and 2.45. But Leishman provides no analysis, argument, or even discussion explaining why substantial evidence does not support these factual findings. And we generally decline to consider an issue when a party has failed to provide meaningful argument. *Wiklem v. City of Camas*, 31 Wn. App. 2d 575, 593, 551 P.3d 1067 (2024), *review denied,* 4 Wn.3d 1002 (2025). Therefore, we treat the trial court's findings of fact with respect to Grant's receipt of the November 2020, April 2021, and May 2021 emails as unchallenged findings that we consider true on appeal. *Real Carriage Door*, 17 Wn. App. 2d at 457.

Treating trial court's findings as true, there is insufficient evidence to show that Grant ever actually received the emails sent by Leishman. Therefore, even assuming Grant – an AGO employee – could receive notice of a public record requests on behalf of the Governor's Office, we conclude that the trial court's findings of fact support its conclusion of law that the

Governor's Office did not receive fair notice of the Leishman's public record requests based on the emails sent to Grant.

Further, we disagree with Leishman's argument that *O'Dea*, 19 Wn. App. 2d 67, stands for the proposition that an attorney employed by the AGO can receive fair notice of a public record request directed to the Governor's Office.

*O'Dea* is distinguishable. In *O'Dea*, the attorneys who received the complaint attaching the public records request were representing the City of Tacoma, the same agency from which O'Dea sought records. *Id.* at 74. Here, Grant was not representing the Governor's Office when Leishman sent the November 2020 and April 2021 emails. And he was not an employee of the Governor's Office; the AGO is a separate state agency from the Office of the Governor. *O'Dea* did not hold that a state agency receives fair notice of a public record request when that request is sent to an employee of a different state agency.

Grant apparently was representing the Governor's Office in the federal lawsuit when Leishman sent the May 2021 email. But the email related to unanswered communications with opposing counsel in general, not communications specific to Grant's representation of the Governor's Office. More significantly, in *O'Dea* the plaintiff's lawsuit alleged a PRA violation based on the failure to respond to the attached public record requests. 19 Wn. App. 2d at 74. The federal lawsuit in which Grant was representing the Governor's Office did not assert a claim for a PRA violation and did not attach Leishman's public record requests.

We hold that the trial court did not err in concluding that the Governor's Office did not receive fair notice of Leishman's public record requests before October 2021.

3.    June 2021 Federal Court Declaration

Leishman argues that his June 1, 2021 declaration in federal court that attached his April 28, 2021 email, which was served on the Governor's Office as a party to that lawsuit, was sufficient to provide the Governor's Office with fair notice of his October 2020 public record requests.[4]  We disagree.

In *O'Dea*, the public record requests were attached to the complaint against the City alleging a PRA violation for the failure to respond to those requests.  19 Wn. App. 2d at 74.  Here, the declaration was filed in a federal lawsuit against multiple parties that was unrelated to a PRA violation.  And the declaration did not attach Leishman's public record requests.  In addition, the declaration had nothing to do with the public record requests.  The April 2021 email was one of several exhibits regarding a discovery issue that identified opposing counsel's failure to respond to communications.  Nothing about the declaration suggests that Leishman was making a public record request in that document.

We hold that the June 2021 federal court declaration attaching the April 2021 email was insufficient to provide fair notice to the Governor's Office of Leishman's October 2020 public record requests.

C.    GOVERNOR'S OFFICE RECEIPT OF EMAILS

Leishman argues that (1) the trial court erred in applying the "mailbox rule" to determine whether the Governor's Office received his public record requests; and (2) even if that rule applied, substantial evidence does not support the trial court's finding that the Governor's Office

---

[4] Leishman apparently concedes that the sentence in his second amended complaint in federal court stating that the Office of the Governor had not yet responded to his public record requests was insufficient to provide the agency notice of the request. (stating that the statements in the complaint are irrelevant to his argument).

did not receive his public record requests until October 2021. We conclude that regardless of whether the mailbox rule applies, substantial evidence supports the trial court's findings that the Governor's Office did not receive the November 2020 and April 2021 emails. And the trial court did not err in failing to make a finding that the Governor's Office received the public record requests in Leishman's September 29, 2021 email.

1.    Mailbox Rule

"The mailbox rule provides that the proper and timely mailing of a document raises a rebuttable presumption that the document has been received by the addressee in the usual time." *Olson v. The Bon, Inc.*, 144 Wn. App. 627, 634, 183 P.3d 359 (2008). The trial court applied the mailbox rule to determine whether the Governor's Office received Leishman's emails and concluded that the Governor's Office rebutted the presumption of receipt.

Leishman argues that the mailbox rule is inapplicable to emailed PRA requests. He does not explain how the trial court should have analyzed this issue, but he seems to suggest that a party should not be able to rebut the presumption of receipt of an email. However, this position is inconsistent with *O'Dea*, which requires that an agency have fair notice of a public record request before it can be required to respond. 19 Wn. App. 2d at 80. Fair notice of an emailed request necessarily exists only if an agency actually receives the email.

As a result, we do not need to decide whether the mailbox rule applies to emailed PRA requests. The only issue is whether substantial evidence supports the trial court's findings that the Governor's Office did not receive Leishman's emails.

2.    Substantial Evidence

Leishman does not challenge the trial court's findings that Leathers and Thompson did not receive the November 2020 email in their inboxes in November 2020 and that the evidence

18

was insufficient to determine whether they received that email in their junk email folders in November 2020. He also does not challenge the court's findings that Thompson did not receive the April 2021 email in her inbox in April 2021 and that the evidence was insufficient to determine whether Leathers or Thompson received that email in their junk email folders in April 2021.

Leishman challenges only the finding that Leathers did not receive the April 2021 email in April 2021. But Leathers testified that she did not receive that email. And after learning that Leishman claimed that he sent the April 2021 email to her, she checked her inbox and junk folder and did not find that email. The trial court found that Leathers was credible. We do not review credibility determinations. *Real Carriage Door*, 17 Wn. App. 2d at 457. Therefore, we conclude that substantial evidence supports the trial court's finding that Leathers did not receive the April 2021 email.

Leishman also emphasizes that the trial court's factual findings did not address his September 29, 2021 email that purported to attach the October 2020 public record requests. At trial, Leishman testified that he attached copies of the October 2020 requests in his September 29 email. But the actual email was not admitted into evidence. What was admitted into evidence was the Governor's Officer's responses to requests for admission stating that the September 29 email did not include attachments or the attachments were illegible. And Leishman did not ask Leathers about the September 29 email. However, Leathers testified that Leishman did not successfully submit his public record request until October 2021. Under the circumstances, we do not fault it for not entering a finding of fact on this issue.

Accordingly, we hold that substantial evidence supports the trial court's findings of fact, and those findings support the trial court's conclusion of law that the Governor's Office did not receive fair notice of Leishman's public record request until October 2021.

D.    CR 60(b)(4) MOTION

Leishman argues that the trial court erred when it denied his CR 60(b)(4) motion to vacate the judgment due to fraud in obtaining the judgment. We disagree.

CR 60(b)(4) authorizes a trial court to vacate a judgment for "[f]raud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." CR 60(b)(4) focuses on whether a judgment was fraudulently obtained, not whether the judgment was correct. *In re Marriage of Bresnahan*, 21 Wn. App. 2d 385, 406, 505 P.3d 1218 (2022). A party seeking relief under CR 60(b)(4) must establish their right to relief by clear and convincing evidence. *Id.* We review a CR 60(b) motion for an abuse of discretion. *Id.*

Leishman argues that the trial court should have granted his CR 60(b)(4) motion because counsel falsely represented that the second September 29, 2021 email Leishman sent to the Governor's Office lacked any legible attachments. But this was a disputed factual issue. Leishman claimed that he sent a second email on September 29 with the public record requests attached. The Governor's Office stated that the September 29 email contained no legible attachments. Leishman did not prove either at trial or in his motion that the Governor's Office's statement was false. As the trial court noted, Leishman did not even ask Leathers about the September 29, 2021 email at trial. Leishman did not present clear and convincing evidence of fraud in obtaining the judgment.

We hold that the trial court did not abuse its discretion in denying Leishman's CR 60(b)(4) motion.

No. 58929-0-II

E.     ATTORNEY FEES ON APPEAL

Leishman requests attorney fees.  RCW 42.56.550(4) permits the prevailing party in a

PRA action to recover its reasonable attorney fees.  But because Leishman is not the prevailing

party, we deny his request for attorney fees.

CONCLUSION

We affirm the trial court's final judgment dismissing Leishman's PRA claim.

A majority of the panel having determined that this opinion will not be printed in the

Washington Appellate Reports but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

_____
MAXA, P.J.

We concur:

_____
PRICE, J.

_____
CHE, J.

21